IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CHARLES ENGLAND,<br><br>        Petitioner,<br>  v.<br><br>DAVID L. RUNNELS, Warden,<br><br>        Respondent.                 / | No. C 05-04843 SI<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On July 6, 1999, a Santa Clara County jury found petitioner John Charles England guilty of possession of methamphetamine (Cal. Health & Saf. Code §§ 11055(d)(2), 11377(a)), fleeing from an officer with disregard for the safety of persons or property (Cal. Veh. Code § 2800.2), causing serious bodily injury while resisting an officer (Cal. Pen. Code § 148.10(a)), being under the influence of methamphetamine (Cal. Health and Saf. Code § 11500(a)), and resisting an officer (Cal. Pen. Code § 148(a)(1)). Ex. 1 at 81-82; Ex. 2 at 569-71. In a bifurcated proceeding, the trial court judge found that petitioner's out-of-state prior offenses constituted "serious felonies" and therefore "strikes" under California state law. Ex. 2 at 585-86. Thereafter, the jury found that petitioner had in fact been convicted of these priors and had previously served two prison terms (Cal. Pen. Code § 667.5(b)). Ex. 1 at 321-22, 326-27; Ex. 2 at 694-97. On November 5, 1999, petitioner was sentenced to an aggregate sentence of 53 years to life.

On November 28, 2005, petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises four claims: (1) petitioner was deprived of his Sixth Amendment right to a jury trial as to prior "strike" allegations beyond the "fact" of the prior convictions; (2) insufficient evidence existed to prove that the "strike" priors had the required elements of "serious felonies" under California law; (3) petitioner was denied his federal constitutional right to full, correct instructions on

elements of the charged crime when the trial court failed to *sua sponte* instruct the jury on the requirement of foreseeability of intervening causes; and (4) petitioner's sentence of 50 years to life for possession of methamphetamine and reckless flight from an officer is cruel and unusual punishment in violation of the Eighth Amendment.

After carefully reviewing the parties' briefs and the record, the Court hereby DENIES the petition for the reasons discussed below.

**BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> On June 24, 1998, Officer Moiseff saw defendant arrive at 281 Curtner in the truck involved in [a] detention a month earlier.[1] Hoping to apprehend defendant but fearing another chase, Moiseff called for assistance, notifying responding officers that defendant was wanted for a felony arrest. As Moiseff was coordinating the arrival of other units, he saw defendant enter the truck and drive off.
>
> Moiseff followed defendant's truck as did Officers Ackermann, Sims, and Dziuba. The four deferred the traffic stop to Officer Priddy, who was in a marked patrol car. Officer Ouimet, also in a marked patrol car, was behind Priddy. At an intersection, Priddy and Ouimet pulled behind defendant's truck and turned on their red lights. Defendant turned around, looked at Officer Priddy, turned into a dirt lot, almost came to a stop, turned again to look at Priddy, opened his door and slowed as if he were going to abandon the truck, closed the door, and accelerated through a market parking lot at about 20 to 25 miles per hour.
>
> . . .
>
> Defendant exited the lot by turning at an unsafe speed. He then drove northbound on Bascom Avenue. Dziuba tried to block his path, but defendant continued to accelerate, and Dziuba was forced to back up and move the patrol car out of the way to avoid being hit. The officers having their sirens and lights on enabled the traffic on Bascom to get out of the way of the chase. Defendant drove through a red light and then, despite the presence of "heavy traffic," he drove about 15 to 20 seconds on the wrong side of the street for about 200 yards. According to Ackermann, three or four cars had to take evasive action to avoid a collision; Sims said the cars were "splitting just to let him through." Defendant then drove through a convenience store parking lot and exited into a residential neighborhood where children were riding their bikes, one child was playing basketball, and a man was mowing his lawn. Defendant made his way through the residential neighborhood back to the residence on Curtner at speeds of approximately 35 to 55 miles per hour.

---

[1] In the course of this detention, police discovered .28 grams of methamphetamine on petitioner's person. When this discovery was made, petitioner ran away and ultimately escaped custody.

2

> Defendant pulled into the driveway of his residence, abandoned the truck while it was running, and fled on foot through a carport and over a three-foot chain link fence. Priddy, Ackermann, and Sims ran after defendant and jumped over the same fence. In doing so, Priddy suffered a puncture wound when a wire on top of the fence went through his palm. Defendant jumped over a second fence, as did the three officers in pursuit.
>
> At this point, defendant found himself in an enclosed area. Dziuba drew his gun, pointed it at defendant, and ordered him to freeze. Sims testified he identified himself as a police officer and ordered defendant to get on the ground, but defendant "wasn't paying attention to my commands. He had not paid attention to Officer Dziuba's commands. He had already run from us on several occasions. And it looked like he was still continuing to run. He had already displayed a disregard for public safety. So I couldn't possibly allow him to escape at that point. . . . I ended up just grabbing onto him."
>
> Defendant struggled on the ground with Sims and another officer as they tried to subdue defendant, who "wasn't giving up." Priddy described the scene as "pandemonium" as they wrestled with defendant, trying to get him handcuffed. Ackermann, who is 6 feet 2 inches, 210 pounds, and a "pretty strong person," said he was using all his strength but was "having a very difficult time" subduing defendant, who was "thrashing" his arms, kicking his legs, and trying to bite Ackermann.
>
> In jumping over the second fence, Officer Dziuba "blew out his knee" when he came down at an awkward angle.

Ex. 12 at 1-3. The California Court of Appeal further summarized petitioner's relevant Minnesota priors as follows:

> In case No. 33938 . . . defendant admitted that, on the evening of September 8, 1980, he and his codefendant Pat Arndt got a "crazy idea" of robbing a gas station. Defendant stated that, when he entered the station to "look the place over," there was "an individual" in the store whom defendant later learned was named Patrick Norman. Defendant used the telephone after he "asked for change for a quarter." Then, pursuant to their plan, Arndt came through the door wearing a mask and holding a knife. Defendant testified that Arndt jumped over the counter and went towards "the clerk." The clerk pushed Arndt away; the clerk ran and Arndt followed. The clerk left the till open and defendant grabbed about $100 from it. Defendant was arrested about two weeks later.
>
> [In case No. 33738], [t]he record reveals that, on February 5, 1983, defendant entered a 7-Eleven store and asked the cash register clerk for a pack of cigarettes. When the clerk handed over the cigarettes, defendant tried to reach into the till and grab money, but the clerk slammed the till shut onto defendant's hand. Defendant never was able to grab the money. He admitted he struggled with the clerk but denied striking her.

*Id*. at 13-14.

The California trial court sentenced petitioner to a determinate term of three years for the prior prison term enhancements, two consecutive indeterminate terms of 25 years to life for the two felonies

3

described above, and a concurrent indeterminate term of 25 years to life for a third felony that was later dropped, for an aggregate sentence of 53 years to life. Ex. 1 at 439-41; Ex. 2 at 694-97.

Petitioner appealed to the California Court of Appeal. On April 12, 2002, the California Court of Appeal affirmed the convictions. *See* Ex. 12. The court, however, found that there was insufficient evidence to support one of the prior strike findings. *Id*. The court reversed the true finding as to that alleged strike and remanded the case to the trial court for resentencing and a potential retrial of the alleged strike. *Id*. at 11-13, 17. The California Supreme Court denied the petition for review on July 12, 2002. *See* Ex. 14. The United States Supreme Court denied certiorari on December 2, 2002. *See* Ex. 16.

On remand, the trial court dismissed the reversed strike allegation and denied petitioner's request to dismiss the other two strike allegations. *See* Ex. 22. Upon resentencing, the trial court imposed a sentence identical to the original. *Id*. Petitioner again appealed to the California Court of Appeal. On May 5, 2004, the Court of Appeal affirmed petitioner's sentence. *Id*. The California Supreme Court again denied review on July 14, 2004, and the United States Supreme Court denied certiorari on November 29, 2004. *See* Ex. 24; Ex. 26.

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus if the

> adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to established law if it applies a rule that contradicts the law as set forth by the Supreme Court, or arrives at a different result in a case that is "materially indistinguishable" from a Supreme Court decision. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). "Clearly established federal law, as determined by the Supreme Court of the United States" refers to the

4

"holdings . . . of the Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004). Circuit decisions may still be relevant as persuasive authority to assess what law is "clearly established." *Clark v. Murphy*, 331 F.3d 1062, 1070-71 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003). Unreasonable application of established law occurs when the court "correctly identifies the governing legal rule but applies it unreasonably to the facts." *Id*. Under AEDPA, although Supreme Court precedent is the only controlling authority, Ninth Circuit case law is persuasive authority for the purposes of review of previous state court decisions. *See Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), *amended by* 311 F.3d 928 (9th Cir. 2002).

In reviewing a habeas corpus petition, a federal court must look at the last reasoned decision of the state court to determine whether that court's decision was contrary to or an unreasonable application of established federal law. *Id.* at 960-61. Here, the last reasoned decision of the state court is the decision issued by the California Court of Appeal on May 5, 2004. *See* Ex. 22.

**DISCUSSION**

**I.     Jury Determination of Prior Strike Allegations**

Petitioner contends that a jury, not the judge, should have determined whether his Minnesota convictions contained all the elements of a "serious felony" under California law. In California, prior crimes must be adjudged "serious felonies" in order to be considered "strikes" for the purpose of the state's "Three Strikes" law. Cal. Pen. Code § 1170.12(b)(2). Under California law, the crime of robbery is considered a serious felony. *See id*. § 1192.7(c)(19). Robbery under California law is the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Pen. Code § 211. California robbery also requires "a specific intent to permanently deprive the victim of the property." *People v. Torres*, 33

5

Cal.App.4th 37, 50 (1995) (*quoting People v. Ford*, 60 Cal.2d 772, 792 (1964)).

In contrast, under Minnesota law, robbery is committed when a person, "having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in the taking or carrying away of the property . . . ." Minn. Stats. § 609.24. Therefore, Minnesota robbery lacks two elements of California robbery: (1) that the victim of the crime be "in possession" of the property, and (2) that the person taking the property have a "specific intent to permanently deprive" the person of possession of the property. At trial, the judge found these elements to be present in petitioner's Minnesota priors based on the records of conviction. On that basis, the judge ruled that petitioner had committed "three strikes" under California law.

Petitioner urges the Court to restrict the "prior conviction" exception announced in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) to the mere *fact* of a prior conviction. In *Almendarez-Torres*, the United States Supreme Court held that prior convictions are not "elements" as contemplated by the Sixth and Fourteenth Amendments, and their existence could therefore be determined by a judge. *Id.* at 243-44; *see also Patterson v. New York*, 432 U.S. 197, 210 (1977) ("The Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."). The Court reasoned that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243. *See also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt).

Petitioner argues that the facts concerning his Minnesota priors that were not established in the prior proceedings[2] should be proven to a jury beyond a reasonable doubt. Unlike the "fact" of his prior

---

[2] With respect to case No. 33938, the fact not established by a jury is whether the victim in the gas station was a clerk and therefore in constructive possession of the money in the till. The fact not established by a jury in case 33738 is whether petitioner forcefully removed his hand from the till in the furtherance of his attempted robbery or whether it was to simply escape.

6

conviction, the unestablished facts were never found by a jury. Petitioner claims, therefore, that the missing facts lack the procedural reliability afforded to the "fact" of his prior convictions. Petitioner cites the Supreme Court's rationale in *Apprendi*:

> Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torrez did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range.

*Apprendi*, 530 U.S. at 488.

The California Court of Appeal rejected this argument on several grounds. Citing *People v. Kelii*, 21 Cal. 4th 452 (1999), the court first concluded that a defendant "has neither a statutory nor a constitutional right to have a jury determine whether a prior conviction qualified as a serious felony or strike." Ex. 12 at 15. The court further held that this type of determination "often is purely legal" in which the trier of fact "considers only court documents." *Id*. The court cited *People v. Thomas*, 91 Cal. App. 4th 212, 216 (2001), in ruling that petitioner's narrow reading of *Apprendi* "takes the language out of its context." *Id*. at 17. The court concluded that the "language relied upon by defendant in *Apprendi*, 'other than the fact of a prior conviction,' refers broadly to recidivism enhancements." *Id*. (*quoting Thomas*, 91 Cal. App. 4th at 222).

Since the time that the California Court of Appeal issued its opinion in this case, the California Supreme Court decided *People v. McGee*, 38 Cal. 4th 682 (2006), which squarely held that the *Apprendi* jury trial right does not extend to proof of facts concerning a prior conviction which show that the prior conviction is a serious felony. The California Supreme Court's decision in *McGee*, authored by Chief Justice George, summarized its holding as follows:

> The issue presented in the case before us is whether . . . a criminal defendant has a right under the federal Constitution to have *a jury*, rather than *the court*, examine the record of the prior criminal proceeding to determine whether the earlier conviction subjects the defendant to an increased sentence when that conviction does not itself establish on its face whether or not the conviction constitutes a qualifying prior conviction for purposes of the applicable sentencing statute. The Court of Appeal held that the federal Constitution grants a criminal defendant the right to have a jury make such a determination, interpreting the United States Supreme Court's decision in *Apprendi* . . .as compelling that conclusion . . . .

7

> As we shall explain, we read the United States Supreme Court's decisions that we cite and discuss as authority for our conclusion that defendant's federal constitutional right to a jury trial was not implicated in he proceedings below. Unless and until the high court directs otherwise, we shall assume that the precedents from that court and ours support a conclusion that sentencing proceedings such as those conducted below do not violate a defendant's constitutional right to a jury trial.
>
> Although we recognize the possibility that the high court may extend the scope of the *Apprendi* decision in the manner suggested by the Court of Appeal, we are reluctant, in the absence of a more definitive ruling on this point by the United States Supreme Court, to overturn the current California statutory provisions and judicial precedent that assign to the trial court the role of examining the record of a prior criminal proceeding to determine whether the ensuing conviction constitutes a qualifying prior conviction under the applicable California sentencing statute.

*Id*. at 685-86.

As noted by the California Supreme Court, the United States Supreme Court has yet to decide on the precise issue raised by petitioner. Further, while petitioner cites no persuasive authority for his proposition, respondents cite several circuit court decisions explicitly rejecting the limitation of the *Apprendi* exception to the mere "fact" of conviction. *See*, *e.g.*, *United States v. Morris*, 293 F.3d 1010, 1012 (7th Cir.), *cert. denied*, 537 U.S. 987 (2002) (judicial determination that prior convictions were committed on occasions different from one another was proper); *United States v. Kempis-Bonola*, 287 F.3d 699, 702 (8th Cir), *cert. denied*, 537 U.S. 914 (2002) (judicial determination that a prior conviction is "aggravated" is proper); *United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001), *cert. denied*, 535 U.S. 1070 (2002) (judicial determination that prior convictions were committed on occasions different from one another was proper). As such, there is no "clearly established" federal law on point, and the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. *See Stevenson*, 384 F.3d at 1071. The Court, therefore, must deny petitioner's claim for habeas corpus relief based on the denial of a jury trial.

Because the Court has ruled that there is no constitutional error, it need not consider whether the error was harmless as required by *Washington v. Recuenco*, __ U.S. __, 165 L. Ed. 2d 466, 477 (2006).

## II.    **Insufficient Evidence that Priors are "Serious Felonies"**

Petitioner contends that the record contains insufficient evidence to prove that the two Minnesota

8

robberies are in fact "serious felonies" necessary to constitute "strikes" under California's "Three Strikes" law. In an insufficiency of evidence challenge to a state criminal conviction brought under § 2254, a petitioner is only entitled to relief if "it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

The California Court of Appeal compared the elements of Minnesota and California robbery and concluded that both the "specific intent to permanently deprive" and the "possession" elements of the California crime were missing from the definition of the Minnesota crime. Ex. 12 at 12. The court further concluded, however, that there was sufficient evidence in the record to satisfy both of the missing elements for each of the Minnesota priors. *Id.*

The California Court of Appeal first addressed Minnesota prior No. 33938. After assessing the facts of the case and the testimony at trial, the court found that the person in the gas station was in fact the clerk. *Id.* at 14. Therefore, the victim was in constructive possession of the money in the till and the "possession" element of California robbery was fulfilled:

> We are convinced the record in case No. 33938 meets the "possession" requirement of California law because defendant's testimony was adequate to support a finding that Norman was an employee with constructive possession of the money in the gas station's till. (See *People v. Nguyen (2000)* 24 Cal.4th 756, 761-762, and authorities cited therein.) Given that Norman was the sole victim named in the charging document, Norman was the only person named in defendant's testimony, and defendant testified there was only "an" individual inside the store, a reasonable trier of fact would conclude that defendant, who was "casing" the station before Arndt's entry, asked Norman, the clerk, for change, possibly as a way of getting him to open the till. Similarly, the fact defendant fled with the cash and was not arrested for two weeks provides ample evidence of the required intent to permanently deprive the owner of his property.

*Id.*

The California Court of Appeal then turned its attention to Minnesota prior No. 37738. Petitioner argued that there was no "specific intent to permanently deprive" the store of its money because he used force to escape rather than in an attempt to complete his crime. In addressing this argument, the court first considered the language of petitioner's guilty plea. According to the court, by pleading guilty, petitioner admitted he "used force against Karla Hinnekamp to overcome her resistance

9

to the attempted carrying away of the property . . . ." *Id*. at 15. The court further concluded that the record was consistent with the notion that petitioner had the specific intent to permanently deprive the store of its money:

> Defendant used force to try to take the money, and he acknowledged that he knew that he was not entitled to it. We reject defendant's claim that the use of force was separate from the attempt to take the money and was solely in an effort to escape. The fact defendant tried to grab money from a till and was only stopped by the clerk's defensive actions provides evidence from which we can conclude that defendant intended to permanently deprive the rightful owner of possession by forcibly taking the property from someone who had constructive possession of it.

*Id*. at 15.

This Court holds that it was reasonable for the California Court of Appeal to conclude that the Minnesota priors satisfied the elements of California strikes beyond a reasonable doubt. The court carefully and thoroughly reviewed the record and came to a rational conclusion. In case No. 33938, it is reasonable to conclude that Mr. Norman was the gas station clerk and thus in constructive possession of the till. He was the sole victim in the charging document, and the only person inside the store at the time of the robbery.

With respect to case No. 37738, it was reasonable for the California Court of Appeal to hold that petitioner used force in an effort to complete his crime, thereby satisfying the "specific intent to permanently deprive" element. The record indicates that petitioner tried to grab money from the till and only stopped when the clerk slammed the till door on his hand. Ex. 12 at 15. From this fact, in addition to the language of petitioner's guilty plea (admitting to the use of "force against Karla Hinnekamp to overcome her resistance to the attempted carrying away of the property" (*Id.*)), it is reasonable to conclude that petitioner's use of force was contemporaneous with his attempt to steal the money. When combined with petitioner's admission that he knew he was not entitled to the money in the till, the "specific intent to permanently deprive" element is satisfied beyond a reasonable doubt.

### III. Instructional Error

Petitioner claims that the trial court failed to correctly instruct the jury on the requirement of

10

foreseeability of intervening causes with regard to his conviction for violating Cal. Pen. Code § 148.10, causing serious bodily injury while resisting an officer.[3] The California Court of Appeal held that petitioner waived this argument when he did not object to the instructions at trial. Ex. 12 at 5. According to the court, "it was incumbent upon defendant to seek clarification or amplification of the instructions if he felt such clarification or amplification was necessary." *Id*. Citing California law, the court found that because he failed to question the jury instructions at trial, "defendant has waived any appellate issue regarding" the jury instructions. *Id*.

In a habeas petition, a federal court may not review a state court's decision if it rests on independent and adequate state law grounds unless petitioner can show cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Here, petitioner has not attempted to show either cause and prejudice or a miscarriage of justice. The Court finds that the California Court of Appeal adequately and independently relied on the state law ground of waiver, and will therefore not address the sufficiency of the instructions themselves.

Petitioner argues that the *Coleman* doctrine is not applicable for two reasons: First, regardless

---

[3] Pursuant to CALJIC No. 3.40, the trial court instructed the jury:

To constitute the crime of felony resisting arrest, there must be in addition to the serious bodily injury to the officer, an unlawful act or omission which was the cause of that serious bodily injury to the officer.
The criminal law has its own peculiar way of defining cause. A cause of the serious bodily injury to the officer is an act or omission that sets in motion a chain of events that produces as a direct, natural, and probable consequence of the act or omission the serious bodily injury of the officer and without which the serious bodily injury to the officer would not occur.

Pursuant to CALJIC No. 3.41, the jury was also instructed:

There may be more than one cause of the serious bodily injury to the officer. When the conduct of two or more persons or events contributes concurrently as a cause of the serious bodily injury to the officer, the conduct of each is a cause for the serious bodily injury to the officer if that conduct was also a substantial factor contributing to the result.
A cause is concurrent if it was operative at the moment of the serious bodily injury to the officer and acted with another cause to produce the serious bodily injury to the officer. If you find the defendant's conduct was a cause of injury to another person, then it is no defense that the conduct of some other person, even the injured person, contributed to the injury.

11

of a state court procedural ruling, both California law and federal constitutional principles entitle a defendant to instructions on any element of offense which affects his or her substantive rights. Second, the California Court of Appeal's decision regarding the jury instructions was based on the court's substantive conclusion on the merits of the argument rather than petitioner's procedural default. *Id.* at 23. The Court finds both arguments unavailing.

The Court agrees with petitioner that he has the constitutional right to jury determination beyond a reasonable doubt on every element of the crime for which he is charged. *See Yates v. Evatt*, 500 U.S. 391, 400 (1991); *see also In re Winship*, 397 U.S. 358, 362 (1970). Petitioner also correctly notes that "foreseeability" is a required element of the crime of Cal. Pen. Code § 148.10, causing serious bodily injury while resisting an officer. Petitioner's argument fails, however, because this element was sufficiently laid out in the jury instructions.

Petitioner conceded to the California Court of Appeal (Ex. 12 at 5) that CALJIC 3.40 was promulgated in response to a California Supreme Court decision which had disapproved an earlier proximate cause test (*Mitchel v. Gonzalez*, 54 Cal.3d 1041, 1052 (1991)), and that CALJIC 3.40 has been approved in several appellate court decisions. *See, e.g.*, *People v. Gardner*, 37 Cal.App.4th 473, 475 (1995); *People v. Autry*, 37 Cal.App.4th 351, 355-57 (1995). Further, this Court agrees with the California Court of Appeal that the clause "direct, natural, and probable consequence" (CALJIC 3.40) adequately encompasses the concept of reasonable foreseeability. *See* Ex. 12 at 5. The Court therefore finds that the jury instructions given by the trial court adequately encompass every element of Cal. Pen. Code § 148.10, causing serious bodily injury while resisting an officer.

Alternatively, petitioner contends that the *Coleman* doctrine does not apply because the California Court of Appeal did not rest its ruling on the independent state procedural rule of waiver, but rather on the merits of his jury instruction claim. While it is true the court addressed the merits of petitioner's argument, it did so only to supplement its ultimate ruling of waiver. *See* Ex. 12 at 5.

The Court finds that the *Coleman* doctrine applies. Therefore, the Court need not rule on the constitutional firmness of the instructions themselves.

12

**IV.    Cruel and Unusual Punishment**

Petitioner argues that his 50 years-to-life sentence for possession of methamphetamine, fleeing from an officer with disregard for the safety of persons or property, and causing serious bodily injury while resisting an officer violates his Eighth Amendment right against cruel and unusual punishment. Respondent argues that this claim is unexhausted and therefore inappropriate for this Court's review, and that the claim is without merit.

**A.    Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988). The state's highest court must be given an opportunity to rule on the claims even if review is discretionary. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must invoke "one complete round of the State's established appellate review process"). To comply with the fair presentation requirement, a claim must be raised at every level of appellate review; raising a claim for the first time on discretionary review to the state's highest court is insufficient. *Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004) (holding that where petitioner only raised his federal constitutional claim on appeal to the Washington State Supreme Court, claim was not fairly presented). However, exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the state's highest court. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Greene v. Lambert*, 288 F.3d 1081, 1086-87 (9th Cir. 2002); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). This is true even where alternative avenues of review are still available in state court. *See id.*

In this case, petitioner argued the Eighth Amendment claim in his original brief in front of the

13

1 California Court of Appeal. *See* Ex. 3 at 9-65. The state court, without ruling on the cruel and unusual
2 punishment issue, upheld petitioner's conviction but remanded the proceedings to the trial court for
3 retrial of a strike allegation that was eventually dropped. *See* Ex 12 at 17. Petitioner appealed the
4 court's decision to the California Supreme Court, at which time he properly presented his Eighth
5 Amendment argument. *See* Ex. 13. Because the Eighth Amendment issue was presented to the highest
6 state court available, the claim was exhausted and consideration on the merits is proper.[4]

### B.     Merits of Eighth Amendment claim[5]

The Supreme Court has identified "one governing legal principle" with which to analyze Eighth Amendment claims in Three Strike cases: "A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The Supreme Court further noted that this principle is "applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73. In *Lockyer*, the petitioner was found guilty of petty theft when he stole $153 worth of videotapes from two different stores. *Id*. at 66. Under California's Three Strikes law, the petitioner was sentenced to 50 years to life. *Id*. The Supreme Court affirmed petitioner's conviction, holding that it was not contrary to or an unreasonable application of Eighth Amendment jurisprudence. *Id*. at 77. The Supreme Court again applied the "grossly disproportionate" principle in a Three Strikes case in *Ewing v. California*, 538 U.S. 11 (2003). In *Ewing*, the petitioner was convicted of felony grand theft for stealing $1200 worth of golf clubs, and subsequently sentenced to 25 years to life under California's Three Strikes law. *Id*. at 18. The Supreme Court affirmed the sentence, holding that under the circumstances, 25 years to life was

---

[4] It is immaterial both that the California Supreme denied review, and that petitioner failed to argue this issue during the second round of appeals. *See Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) ("it is beyond peradventure that exhaustion does not require a state court adjudication on the merits of the claim at issue"); *see also Castille v. Peoples*, 489 U.S. 346, 350 (1989) (exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the state's highest court).

[5] Because neither the California Court of Appeal nor the California Supreme Court adjudicated this claim on the merits, this Court reviews it *de novo*. *See Hudson v. Hunt*, 235 F.3d 892, 895 (4th Cir. 2000).

14

not grossly disproportionate and therefore did not constitute cruel and unusual punishment under the Eighth Amendment. *Id*. at 30-31. Notably, the court reviewed the petitioner's "long history of felony recidivism" in its proportionality discussion. *Id*. at 29.

Petitioner argues that his sentence of 50 years to life is grossly disproportionate to the crimes that he committed. Petitioner notes that absent the prior two strikes, the maximum sentence he could have received in California would be 5 years and 4 months. Petitioner also argues that his sentence vastly exceeds the most extreme punishments available in any other jurisdiction for the same crimes with the same record of prior convictions. Finally, petitioner wishes the Court to consider that all three crimes are "wobblers," i.e. crimes which in the discretion of the prosecutor or the court can be charged as misdemeanors.

This Court concludes that petitioner's Eighth Amendment challenge fails. The Supreme Court has emphasized that the "gross disproportionality" hurdle is extremely high. *See Lockyer*, 538 U.S. at 72-73. The crimes at issue in this case are no less severe than those in *Lockyer* or *Ewing*. Further, the Court finds petitioner's disproportionality argument as it relates to similar crimes in other states unavailing. This argument is akin to challenging the Three Strikes system itself, undermining the Supreme Court's conclusion in upholding the system that California's legislature has made a "deliberate policy choice" based on "legitimate goals" of deterring recidivism and incapacitating recidivist felons. *See Ewing*, 538 U.S. at 29. This Court, like the courts in *Lockyer* and *Ewing*, also rejects the "wobbler" argument. *See Ewing*, 538 U.S. at 28-29; *see also Lockyer*, 538 U.S. at 67. Those decisions make clear that "wobblers" are felonies by default and are only downgraded to misdemeanors if the defendant's rehabilitation would be adversely affected by incarceration. *See Ewing*, 538 U.S. at 28-29; *see also Lockyer*, 538 U.S. at 67. Given petitioner's long criminal history,[6] charging his crimes as felonies rather

---

[6] The California Court of Appeal outlined petitioner's lengthy criminal history and explained that his present offenses were:

"a continuation of [his] career of criminal behavior." The report noted "defendant's criminal record shows seven prior felony convictions for Burglary, Aggravated Robbery, two counts of Simple Robbery, and three counts of Inflicting Corporal Injury on Cohabitant." It also listed defendant's other prior misdemeanor convictions for

15

than misdemeanors was appropriate. *See Ewing*, 538 U.S. at 29. In sum, in light of petitioner's extensive criminal history, along with California's legitimate interest in deterring and punishing recidivism, this Court finds that petitioner's sentence is not grossly disproportionate to his crime and is therefore not in violation of his Eighth Amendment right against cruel and unusual punishment.

## CONCLUSION

For the foregoing reasons and good cause shown, the Court DENIES the petition for writ of habeas corpus. (Docket No. 1).

**IT IS SO ORDERED.**

Dated: April 24, 2007

SUSAN ILLSTON
United States District Judge

---

"Unauthorized use of motor vehicle, Fleeing Police Officer in a Motor Vehicle, Sale or Distribution of Hypodermic Syringe Without License, Possession of Controlled Substance Paraphernalia, two counts of Under the Influence of a Controlled Substance, and two counts of Public Intoxication." The report added that defendant had a pending San Joaquin County case in which he was charged with driving under the influence and other vehicle code violations and that he was on parole when he committed the present offenses.

Ex. 22 at 6.

16